IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JERRY CASTELLI,

      Plaintiff,                            06cv0595

    v.                                 **ELECTRONICALLY FILED**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

## MEMORANDUM OPINION

**December 20, 2006**

    **I.**     **Introduction**

Plaintiff Jerry Castelli brings this action pursuant to 42 U.S.C. § 1383(c)(3), which incorporates by reference 42 U.S.C. § 405(g), seeking review of the final determination of the Commissioner of Social Security ("Commissioner") denying his application pursuant to the Social Security Act ("Act") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Consistent with the customary practice in the Western District of Pennsylvania, the parties have submitted cross motions for summary judgment and the record developed at the administrative proceedings.

After careful consideration of the Administrative Law Judge's ("ALJ's") Decision, the memoranda of the parties, and the entire record, the Court finds the ALJ's decision is supported by substantial evidence, and therefore will deny plaintiff's motion for summary judgment, grant the Commissioner's motion for summary judgment, and enter judgment in favor of the Commissioner.

## II.    Procedural History

Plaintiff, 52 years of age at time of his application, with a high school education and past

relevant work experience as a river boat deck, chicken cutter, produce clerk and materials

handler, applied for SSI on October 23, 2003, alleging inability to work as a result of depression

and anxiety.  His application was denied by the state agency initially and upon reconsideration,

and on July 18, 2005, a hearing was conducted by an ALJ, at which plaintiff testified, as did a

vocational expert ("VE").

On December 12, 2005, the ALJ issued his decision denying DIB and SSI.  The ALJ

found that plaintiff had medically determinable impairments of hepatitis C, depression disorder

NOS and anxiety, with a history of treatment for alcohol and substance abuse, currently in

remission, but that none of these impairments, alone or in combination, equaled any listed

impairment in severity.  As to plaintiff's Residual Functional Capacity ("RFC"), the ALJ found

that plaintiff was capable of performing work at any exertional level, although because of his

non-exertional impairments of depression and anxiety, he would be limited to jobs with little

interaction with the public, peers or supervisors, without the demand to make complex decisions

or follow detailed instructions, and without significant stressful situations or the need to adapt to

frequent changes in the work setting.

After questioning the VE, the ALJ determined that plaintiff could perform his past

relevant work as a materials handler, chicken cutter and produce clerk, and was otherwise

capable of performing work that exists in substantial numbers in the national economy, including

janitor, cleaner, sweeper-cleaner and assembler.  Accordingly, the ALJ found that plaintiff was

not disabled at any time.

Upon plaintiff's request for review, the Appeals Council affirmed the ALJ's decision on

March 3, 2006, and the ALJ's decision became the final decision of the Commissioner.

Thereafter, plaintiff timely commenced this action, and the matter is now before this Court on the

cross motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

**III.     Standards of Review**

Judicial review of  the Commissioner's final decisions on disability claims is provided by

statute.  42 U.S.C. §§ 405(g)[1] and 1383(c)(3)[2].  Section 405(g) permits a district court to review

transcripts and records upon which a determination of the Commissioner is based.  Because the

standards for eligibility under Title II (42 U.S.C. §§ 401-433, regarding Disability Insurance

Benefits, or "DIB"), and judicial review thereof, are virtually identical to the standards under

Title XVI (42 U.S.C. §§ 1381-1383f, regarding Supplemental Security Income, or "SSI"),

regulations and decisions rendered under the Title II disability standard, 42 U.S.C. § 423, are

pertinent and applicable in Title XVI decisions rendered under 42 U.S.C. § 1381(a).  *Sullivan v.*

*Zebley*, 493 U.S. 521, 525 n. 3 (1990); *Burns v. Barnhart*, 312 F.3d 113, 119 n.1 (3d Cir. 2002).

---

[1] Section 405(g) provides in pertinent part:
> Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business. . .

42 U.S.C. § 405(g).

[2] Section 1383(c)(3) provides in pertinent part:
> The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.

42 U.S.C. § 1383(c)(3).

Substantial Evidence

If supported by substantial evidence, the Commissioner's factual findings must be accepted as conclusive. *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995); *Wallace v. Secretary of HHS,* 722 F.2d 1150, 1152 (3d Cir. 1983). The district court's function is to determine whether the record, *as a whole*, contains substantial evidence to support the Commissioner's findings. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court has explained that "substantial evidence" means "more than a mere scintilla" of evidence, but rather, is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson,* 402 U.S. at 401 (citation omitted). *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *Ventura*, 55 F.3d at 901 (*quoting Richardson*); *Stunkard v. Secretary of HHS*, 841 F.2d 57, 59 (3d Cir. 1988).

The Court of Appeals for the Third Circuit has referred to this standard as "less than a preponderance of the evidence but more than a mere scintilla."*Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002), *quoting Jesurum v. Secretary of the Dep't of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). "A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala,* 994 F.2d 1058, 1064 (3d Cir. 1993), *quoting Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). The substantial evidence standard allows a court to review a decision of an ALJ, yet avoid interference with the administrative responsibilities of the Commissioner. *See Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir.1983).

In reviewing the record for substantial evidence, the district court does not weigh the evidence or substitute its own conclusions for those of the fact finder. *Rutheford*, 399 F.3d at

552.  In making this determination, the district court considers and reviews only those findings upon which the ALJ based his or her decision, and cannot rectify errors, omissions or gaps in the medical record by supplying additional findings from its own independent analysis of portions of the record which were not mentioned or discussed by the ALJ. *Fargnoli v. Massarini,* 247 F.3d 34, 44 n.7 (3d Cir. 2001) ("The District Court, apparently recognizing the ALJ's failure to consider all of the relevant and probative evidence, attempted to rectify this error by relying on medical records found in its own independent analysis, and which were not mentioned by the ALJ. This runs counter to the teaching of *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), that '[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.' *Id.* at 87"; parallel and other citations omitted).

Five Step Determination Process

To qualify for DIB under Title II of the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987);  42 U.S.C. § 423 (d)(1) (1982). Similarly, to qualify for SSI, the claimant must show "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1383c(a)(3)(A).

When resolving the issue of whether a claimant is disabled and whether the claimant is entitled to either DIB or SSI benefits, the Commissioner utilizes the familiar five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995).  *See Sullivan*, 493 U.S. at 525.  The Court of Appeals for the Third Circuit summarized this five step process in *Plummer v. Apfel*,

186 F.3d 422 (3d Cir.1999):

> In *step one*, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C .F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. . . . In *step two*, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe", she is ineligible for disability benefits.

> In *step three*, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. *Step four* requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. . . .

> If the claimant is unable to resume her former occupation, the evaluation moves to the final *step* [*five*]. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ *must analyze the cumulative effect of all the claimant's impairments* in determining whether she is capable of performing work and is not disabled. The ALJ will often seek the assistance of a vocational expert at this fifth step. . . .

*Plummer*, 186 F.3d at 428 (italics supplied; certain citations omitted). *See also Rutherford*, 399 F.3d at 551 ("In the first four steps the burden is on the claimant to show that she (1) is not currently engaged in gainful employment because she (2) is suffering from a severe impairment (3) that is listed in an appendix (or is equivalent to such a listed condition) or (4) that leaves her lacking the RFC to return to her previous employment (Reg. §§ 920(a) to (e)). If the claimant satisfies step 3, she is considered per se disabled. If the claimant instead satisfies step 4, the burden then shifts to the Commissioner at step 5 to show that other jobs exist in significant numbers in the national economy that the claimant could perform (Reg. § 920(f)).").

Thus, a claimant may demonstrate that his or her impairment is of sufficient severity to

qualify for benefits in one of two ways:

(1)  by introducing medical evidence that the claimant is disabled *per se* because he or she meets the criteria for one or more of a number of serious Listed Impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1, or that the impairment is *equivalent* to a Listed Impairment.  *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983);  *Stunkard*, 841 F.2d at 59;  *Kangas*, 823 F.2d at 777 (Steps 1-3); or,

(2) in the event that claimant suffers from a less severe impairment, he or she will be deemed disabled where he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ."  *Campbell*, 461 U.S. at 461 (*citing* 42 U.S.C. § 423 (d)(2)(A). In order to prove disability under this second method, plaintiff must first demonstrate the existence of a medically determinable disability that precludes him or her from returning to his or her former job (Steps 1-2, 4).  *Stunkard,* 841 F.2d at 59;  *Kangas*, 823 F.2d at 777.  Once it is shown that he or she is unable to resume his or her previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given plaintiff's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy.  *Campbell*, 461 U.S. at 461; *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003); *Stunkard*, 842 F.2d at 59;  *Kangas*, 823 F.2d at 777.

Vocational Expert - Hypothetical Questions

The determination of whether a claimant retains the RFC to perform jobs existing in the workforce at step 5 is frequently based in large measure on testimony provided by the vocational

expert. *Rutherford*, 399 F.3d at 553, citing *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir.

1984) (citations omitted).  Where a hypothetical question to the VE accurately sets forth all of a

claimant's significant impairments and restrictions in activities, physical and mental, as found by

the ALJ or as  uncontradicted on the medical record, the expert's response as to the existence of

jobs in the national economy which the claimant is capable of performing may be considered

substantial evidence in support of the ALJ's findings on claimant's RFC. *See, e.g., Burns v.

Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002), *citing Podedworny*, 745 F.2d at 218 *and Chrupcala

v. Heckler*, 829 F.2d, 1276 (3d Cir. 1987) (leading cases on the use of hypothetical questions to

VEs).[3]  *See also Plummer*, 186 F.3d at 428 (factors to be considered in formulating hypothetical

questions include medical impairments, age, education, work experience and RFC); *Boone*, 353

F.3d at 205-06 ("At the fifth step of the evaluation process, 'the ALJ often seeks advisory

testimony from a vocational expert.'").  Objections to the adequacy of an ALJ's hypothetical

questions to a vocational expert "often boil down to attacks on the RFC assessment itself."

Rutherford, 399 F.3d at 554 n.8.

Additionally, the ALJ will often consult the Dictionary of Occupational Titles ("DOT"), a

publication of the United States Department of Labor that contains descriptions of the

requirements for thousands of jobs that exist in the national economy, in order to determine

whether any jobs exist that a claimant can perform." *Burns v. Barnhart*, 312 F.3d 113, 119 (3d

Cir. 2002); see also *id.* at 126 (The "Social Security Administration has taken administrative

notice of the reliability of the job information contained in the [DOT].") (citing 20 C.F.R. §

---

[3]         Conversely, because the hypothetical question posed to a vocational expert "must
reflect all of a claimant's impairments," *Chrupcala*, 829 F.2d at 1276, where there exists on the
record "medically undisputed evidence of specific impairments not included in a hypothetical
question to a vocational expert, the expert's response is not considered substantial evidence."
*Podedworny*, 745 F.2d at 218.

416.966(d) (2002)).  While an unexplained conflict between a VE's testimony and the relevant

DOT job descriptions does not *necessarily* require reversal or remand of an ALJ's determination,

the Court of Appeals for the Third Circuit requires the ALJ to address and resolve any material

inconsistencies or conflicts between the DOT descriptions and the VE's testimony, and failure to

do so will necessitate a remand.  *Boone*, 353 F.3d at 206.

<u>Multiple Impairments</u>

Where a claimant has multiple impairments which, individually, may not reach the level

of severity necessary to qualify as a Listed Impairment, the ALJ/ Commissioner nevertheless

must consider all of the claimant's impairments in combination to determine whether,

collectively, they meet or equal the severity of a Listed Impairment. *Burnett*, 220 F.3d at 122

("the ALJ must consider the combined effect of multiple impairments, regardless of their

severity"); *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's

eligibility for benefits, the 'Secretary shall consider the combined effect of all of the individual's

impairments without regard to whether any such impairment, if considered separately, would be

of such severity,'"), *citing* 42 U.S.C. § 423(d)(2)(C), and 20 C.F.R. § § 404.1523, 416.923).

Section 404.1523 of the regulations, 20 C.F.R. § 404.1523, Multiple impairments,

provides:

> In determining whether your physical or mental impairment or impairments are of a
> sufficient medical severity that such impairment or impairments could be the basis of
> eligibility under the law, we will consider the combined effect of all of your impairments
> without regard to whether any such impairment, if considered separately, would be of
> sufficient severity.  If we do find a medically severe combination of impairments, the
> combined impact of the impairments will be considered throughout the disability
> determination process.  If we do not find that you have a medically severe combination of
> impairments, we will determine that you are not disabled (see § 404.1520).

> Even if a claimant's impairment does not meet the criteria specified in the listings, he

must be found disabled if his condition is *equivalent* to a listed impairment. 20 C.F.R. § 404.1520(d). When a claimant presents more than one impairment, "the combined effect of the impairment must be considered before the Secretary denies the payment of disability benefits." *Bittel v. Richardson*, 441 F.2d 1193, 1195 (3d Cir.1971) . . . .”). To that end, the ALJ may not just make conclusory statements that the impairments do not equal a listed impairment in combination or alone, but rather, is required to set forth the reasons for his or her decision, and *specifically* explain why he or she found a claimant's impairments did not, alone or in combination, equal in severity one of the listed impairments. *Fargnoli* , 247 F.3d at 40 n. 4, *citing Burnett*, 220 F.3d at 119-20.

If the ALJ or Commissioner believes the medical evidence is inconclusive or unclear as to whether claimant is unable to return to past employment or perform substantial gainful activities, it is incumbent upon the ALJ to “secure whatever evidence [he/she] believed was needed to make a sound determination.” *Ferguson*, 765 F.2d 36.

<u>Claimant's Subjective Complaints of Impairments and Pain</u>

An ALJ must do more than simply state factual conclusions, but instead must make specific findings of fact to support his or her ultimate findings. *Stewart*, 714 F.2d at 290. The ALJ must consider all medical evidence in the record and provide adequate explanations for disregarding or rejecting evidence, especially when testimony of the claimant's treating physician is rejected. *See Wier on Behalf of Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir.1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir.1981). He or she must also give serious consideration to the claimant's subjective complaints, even when those assertions are not confirmed fully by objective medical evidence. *See Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir.1993); *Welch v. Heckler,* 808 F.2d 264, 270 (3d Cir.1986).

Pain alone, if sufficiently severe, may be a disabling impairment that prevents a claimant from performing any substantial gainful work. *E.g., Carter v. Railroad Retirement Board,* 834 F.2d 62, 65, *relying on Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984); *Smith v. Califano,* 637 F.2d 968, 972 (3d Cir. 1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979). Similarly, an ALJ must give great weight to a claimant's subjective description of inability to perform even light or sedentary work when this testimony is supported by competent evidence. *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433 (3d Cir. 1999), *relying on Dobrowolsky.* Where a medical impairment that could reasonably cause the alleged symptoms exists, the ALJ must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work.  This obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.  *See* 20 C.F.R. § 404.1529(c).  *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

But, if an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision.  *See Cotter*, 642 F.2d at 705. Our Court of Appeals has stated:  "in all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations.   The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work." *Schaudeck*, 181 F.3d at 433.

Subjective complaints of pain need not be "fully confirmed" by objective medical evidence in order to be afforded significant weight. *Smith*, 637 F.2d at 972; *Bittel*, 441 F.2d at

1195.  That is, while "there must be objective medical evidence of some condition that could reasonably produce pain, *there need not be objective evidence of the pain itself.*" *Green,* 749 F.2d at  1070-71 (emphasis added), *quoted in Mason,* 994 F.2d at 1067.  Where a claimant's testimony as to pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ may discount claimant's pain *without contrary medical evidence. Ferguson v. Schweiker,* 765 F.2d 31, 37 (3d Cir. 1985);  *Chrupcala v. Heckler,* 829 F.2d 1269, 1275-76 (3d Cir. 1987); *Akers v. Callahan,* 997 F.Supp. 648, 658 (W.D.Pa. 1998).  "Once a claimant has submitted sufficient evidence to support his or her claim of disability, the Appeals Council may not base its decision upon mere disbelief of the claimant's evidence.  Instead, the Secretary must present *evidence to refute the claim.  See Smith v. Califano,* 637 F.2d 968, 972 (3d Cir.1981) (where claimant's testimony is reasonably supported by medical evidence, the finder of fact may not discount the testimony without contrary medical evidence)." *Williams v. Sullivan,* 970 F.3d 1178, 1184-85 (3d Cir. 1992) (emphasis added), *cert. denied* 507 U.S. 924 (1993).

In making his or her determination, the ALJ must consider and weigh all of the evidence, both medical and non-medical, that support a claimant's subjective testimony about symptoms and the ability to work and perform activities, and must specifically explain his or her reasons for rejecting such supporting evidence. *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119-20 (3d Cir. 2000). Moreover, an ALJ may not substitute his or her evaluation of medical records and documents for that of a treating physician; "an ALJ is not free to set his own expertise against that of a physician who presents competent evidence" by independently "reviewing and interpreting the laboratory reports . . . ." *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).

<u>Medical Opinions of Treating Sources</u>

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.' *Plummer*, 186 F.3d at 429 (*quoting Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)) . . . ." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (additional citations omitted). The ALJ must weigh conflicting medical evidence and can chose whom to credit, but "cannot reject evidence for no reason or for the wrong reason." *Id.* at 317, *quoting Plummer*, 186 F.3d at 429 (additional citations omitted). The ALJ must consider all medical findings that support a treating physician's assessment that a claimant is disabled, and can only reject a treating physician's opinion on the basis of contradictory, medical evidence, not on the ALJ's own credibility judgments, speculation or lay opinion. *Morales*, 225 F.3d at 317-318 (citations omitted).

Moreover, the Commissioner/ ALJ

> must "explicitly" weigh all relevant, probative and available evidence. . . . [and] must provide some explanation for a rejection of probative evidence which would suggest a contrary disposition. . . . The [Commissioner] may properly accept some parts of the medical evidence and reject other parts, but she must *consider* all the evidence and *give some reason for discounting* the evidence she rejects.

*Adorno*, 40 F.3d at 48 (emphasis added; citations omitted). *See also Fargnoli,* 247 F.3d at 42-43 (although ALJ may weigh conflicting medical and other evidence, he must give some indication of the evidence he rejects and explain the reasons for discounting the evidence; where ALJ failed to mention significant contradictory evidence or findings, Court was left to wonder whether he considered and rejected them, or failed to consider them at all, giving Court "little choice but to remand for a comprehensive analysis of the evidence consistent with the requirements of the applicable regulations and the law of this circuit. . . ."); *Burnett*, 220 F.3d at 121 ("In making a

residual functional capacity determination, the ALJ must consider all evidence before him. . . .
Although the ALJ may weigh the credibility of the evidence, he must give some indication of the
evidence which he rejects and his reason(s) for discounting such evidence. . . . 'In the absence of
such an indication, the reviewing court cannot tell if significant probative evidence was not
credited or simply ignored.' *Cotter*, 642 F.2d at 705.") (additional citations omitted).

<u>Medical Source Opinion of "Disability"</u>

However, a medical statement or opinion expressed by a treating source on a matter
reserved for the Commissioner, such as the claimant is "disabled" or "unable to work," is not
dispositive or controlling. *Adorno*, 40 F.3d at 47-48, *citing Wright v. Sulllivan*, 900 F.2d 675, 683
(3d Cir. 1990) ("this type of [medical] conclusion  cannot be controlling. 20 C.F.R. § 404.1527
(1989) indicates that [a] statement by your physician that you are disabled or unable to work does
not mean that we will determine that you are disabled. We have to review the medical findings
and other evidence that support a physician's statement that you are disabled.") (internal citations
omitted).

The rules and regulations of the Commissioner and the SSA make a distinction between
(I) medical opinions about the nature and severity of a claimant's impairments, including
symptoms, diagnosis and prognosis, what the claimant can still do despite impairments, and
physical or mental restrictions, on the one hand, and (ii) medical opinions on matters reserved for
the Commissioner, such as "disabled" or "unable to work," on the other. The latter type of
medical opinions are on matters which require dispositive administrative findings that would
direct a determination or decision of disability. *Compare* 20 C.F.R. §404.1527(a-d) (2002)
(consideration and weighing of medical opinions) *with* 20 C.F.R. §404.1527(e) (2002)
(distinguishing medical opinions on matters reserved for the Commissioner).

The regulations state that the SSA will "always consider medical opinions in your case record," and states the circumstances in which an opinion of a treating source is entitled to "controlling weight." 20 C.F.R. §404.1527(b), (d) (2002).[4]  Medical opinions on matters reserved for the Commissioner are not entitled to "any special significance," although they always must be considered. 20 C.F.R. §404.1527(e)(1-2) (2002). The Commissioner's Social Security Ruling ("SSR") 96-2p, "Policy Interpretation Ruling, Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions," and SSR 96-5p, "Policy Interpretation Ruling, Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner," explain in some detail the distinction between medical opinions entitled to controlling weight and those reserved to the Commissioner.

SSR 96-2p explains that a "finding that a treating source's medical opinion is not entitled

---

[4]     Subsection (d) states: "How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider [a list of] factors in deciding the weight we give to any medical opinion." 20 C.F.R. 404.1527(d) (2002). Subsection (d)(2) describes the treatment relationship," and states:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual  examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, *we will give it controlling weight*. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in  paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. *We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion*.

20 C.F.R. § 404.1527(d)(2) (2002) (emphasis added).

to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator." SSR 96-29, Purpose No. 7. Where a medical opinion is not entitled to controlling weight or special significance because it is on an issue reserved for the Commissioner,[5] these Social Security Rulings require that, because an adjudicator is required to evaluate *all* evidence in the record that may bear on the determination or decision of disability, "adjudicators must *always* carefully consider medical source opinions about any issue, including opinions about those issues that are reserved to the Commissioner," and that such opinions "must *never* be ignored. . . ." SSR 96-5p, Policy Interpretation, (emphasis added). Moreover, because the treating source's opinion and other evidence is "important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion." *Id.*

A medical opinion also is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record . . ." 20 C.F.R. § 404.1527 (d)(2). *See* note 4, *supra*. Where an opinion by a medical source is not entitled to controlling weight, the following factors are to be considered: the examining relationship, the treatment relationship (its length, frequency of examination, and its nature and extent), supportability by clinical and laboratory signs, consistency, specialization and other miscellaneous factors. 20

---

[5]     SSR 96-5p lists several examples of such issues, including whether an individual's impairment(s) meets or equals in severity a Listed Impairment, what an individual's RFC is and whether that RFC prevents him or her from returning to past relevant work, and whether an individual is "disabled" under the Act.

C.F.R. § 404.1527 (d)(1-6).

<u>State Agency Medical and Psychological Consultants</u>

Medical and psychological consultants of a state agency who evaluate a claimant based upon a review of the medical record "are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about whether [a claimant is] disabled." 20 C.F.R. § 404.1527 (f)(2)(I). See also SSR 96-6p: Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants ("1. Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the administrative law judge and Appeals Council levels of administrative review. 2. Administrative law judges and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions.").

**IV.    Discussion**

Plaintiff makes two related arguments on appeal: first, plaintiff argues that the ALJ did not adequately explain why he discounted the repeated low- range Global Assessment of Functioning ("GAF") scores (consistently in the 45 to 55 range) documented by various mental health care professionals, and that the ALJ left out important non-exertional limitations in his hypothetical question to the VE, including plaintiff's low GAF scores, so that the hypothetical question was inadequate.

As noted, plaintiff has been diagnosed, with depression and anxiety, and treatment for

alcohol and substance abuse, which was in remission at the time of the hearing.  The Listed

Mental Impairments which plaintiff most closely approximates are Listings 12.04, Affective

Disorders, and 12.06, Anxiety-related Disorders.

Listing 12.00, Mental Impairments, provides that the "evaluation of disability on the basis

of mental disorders requires documentation of a medically determinable impairment(s),

consideration of the degree of limitation such impairment(s) may impose on the individual's

ability to work, and consideration of whether these limitations have lasted or are expected to last

for a continuous period of at least 12 months." Affective disorders, 12.04,  and anxiety-related

disorders, 12.06, each consists of a "statement describing the disorder(s) addressed by the listing,

paragraph A criteria (a set of medical findings), and paragraph B criteria (a set of

impairment-related functional limitations). There are additional functional criteria (paragraph C

criteria) . . ." for Listing 12.04 and 12.06, *inter alia*, as is set forth more fully below:

> **12.04 Affective Disorders**: Characterized by a disturbance of mood,
> accompanied by a full or partial manic or depressive syndrome. Mood refers to
> a prolonged emotion that colors the whole psychic life; it generally involves
> either depression or elation.
>
> The required level of severity for these disorders is met *when the requirements
> in both A and B are satisfied, or when the requirements in C are satisfied*.
>
> A. Medically documented persistence, either continuous or intermittent,
> of one of the following:
>
> 1. Depressive syndrome characterized by at least four of the following:
>
> a. Anhedonia or pervasive loss of interest in almost all activities; or
> b. Appetite disturbance with change in weight; or
> c. Sleep disturbance; or
> d. Psychomotor agitation or retardation; or
> e. Decreased energy; or
> f. Feelings of guilt or worthlessness; or
> g. Difficulty concentrating or thinking; or
> h. Thoughts of suicide; or

i. Hallucinations, delusions, or paranoid thinking; or

2. Manic syndrome characterized by at least three of the [symptoms listed in a-h] . . ., or

3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

AND
B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration;

OR

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or
2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

\*   \*   \*

**12.06 Anxiety Related Disorders**: In these disorders anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders.

The required level of severity for these disorders is met *when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied.*

A. Medically documented findings of one of the following:

1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:

   a. Motor tension; or
   b. Autonomic hyperactivity; or
   c. Apprehensive expectation; or
   d. Vigilance and scanning; or

2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or

3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or

4. Recurrent obsessions or compulsions which are a source of marked distress; or

5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress;

AND

B. Resulting in at least two of the [same four "B" criteria] . . .

OR

C. Resulting in *complete inability to function independently* outside the area of one's home.

Listings 12.04 and 12.06 (emphasis added), 20 C.F.R. Regulations No. 4, Subpt. P, App. 1.

The ALJ did, in fact, consider plaintiff's mental health care medical records, including his progress notes from Mercy Behavioral Health, and Dr. Brenda Freeman, his treating psychiatrist at Mercy Behavioral, and the assessment of Charles Cohen, a consulting psychologist, and the low GAF scores which he discussed in his decision narrative. Although the ALJ certainly did not expound on the GAF scores, he examined them in context of the medical record as a whole, and

explained why other medical evidence and plaintiff's own description of his daily activities outweighed the implications of the low GAF scores.  A GAF score is a subjective determination which represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV), (4th ed. 1994), p. 30.   The GAF score is taken from the GAF scale which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.*

The GAF Scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others or persistent inability to maintain minimal personal hygiene or serious suicidal act with clear expectation of death). *Id.*  As relevant to this case, the rating scale set forth at Axis V of the DSM – IV provides:  41 to 50 –  "serious symptoms (suicidal ideation but low risk); serious impairment in one area;" 51 to 60 –  "moderate symptoms in most areas."

Critical to the ALJ's decision was the fact that none of the mental health care professionals, including Dr. Freeman, diagnosed plaintiff as having "marked" limitations or frequent periods of decompensation as required by the B criteria of the mental health listings for a period expected to last one year or more, nor that he met the C criteria, and the ALJ's own assessment of plaintiff's daily activities convinced him that plaintiff's limitations from depression and anxiety were no more than moderate, and that they could be accommodated with the work restrictions previously described.

In conjunction with the consultative evaluations, the Court finds that ALJ had substantial evidence on which to base his RFC determination and to accurately assess plaintiff's non-exertional limitations.  It follows that the hypothetical question posed to the VE was adequate.

**V.      Conclusion**

The Court has no doubt that plaintiff endures serious depression and anxiety which requires him to seek professional help, and acknowledges that the emotional distress from these impairments and from alcohol and substance abuse treatment must be quite daunting at times. Although sympathetic, however, the Court is constrained to conclude, in light of the foregoing standards of review, that the ALJ's findings of fact are supported by substantial evidence on the record as a whole, and his conclusions drawn therefrom are sound.  Accordingly, the Court will affirm the decision and issue an appropriate order.

s/ Arthur J. Schwab_____
Arthur J. Schwab
United States District Judge

cc:      All counsel of record as listed below

Karl E. Osterhout, Esquire
1789 South Braddock Avenue
Suite 570
Pittsburgh, PA 15218

Lee Karl, AUSA
United States Attorney's Office
700 Grant Street
Suite 4000
Pittsburgh, PA 15219